We're going to move to our third. Council when y'all come forward, feel free to sit at the first two tables, the ones that are closest to the bench. Thank you very much. Thank you very much. Thank you very much to represent the appellant in this case, Jefferson County Sheriff's Office Deputy Monica Everett. We filed this bill asking this court to overturn the district court's opinion that denied our client qualified immunity based on actions that occurred in the jail. The plaintiff's claim in this case is for deliberate indifference related to a suicide risk and serious harm within the jail. At summary judgment here, the facts are not disputed. There's video evidence. The facts are what they are at this point. And we believe based on the facts that were brought before the district court, qualified immunity should have been granted in our deputy's favor. Mainly because to be successful at summary judgment, the plaintiff must show the defendant committed a constitutional violation and that that law was clearly established. That's the benchmark to get past qualified immunity defense. On the first question of whether our deputy Monica Everett committed a constitutional violation. The facts of this case, like I said, at summary judgment are not disputed. Deputy Everett was working as a first floor deputy in the jail. The guy called up to the fifth floor and while she was transporting an inmate into a block, the plaintiff was in cell A11. I don't know how familiar you are with the jail or this case, but A11 is on the first floor of the jail and the plaintiff was on suicide watch. Our deputy was not one of the deputies or control room officers who was supposed to monitor that cell. She was not the deputy who worked that cell that day. But she did recognize that Ms. Gant was on suicide watch, right? Yes, Your Honor, she did. Based on her experience at the jail, she could recognize just by looking at her that she was on suicide watch, right? Yes, when she gets in the jail or up to that cell and looks in the cell block, she testifies she sees her and a suicide smock. So she understands she's on the suicide watch. It's the smock that makes that apparent to her, right? Yes. She's not wearing it, right? In the video, if you do the time, it doesn't appear she would have been wearing it, but the smock was in the cell. And also, being on the first floor, isn't that also indicative of someone who would be on suicide watch? That's how I understood the record. Yes, the record, and she testified to that, was typically they tried to put the suicidal inmates on the first floor. So if you're in that A block, there's six cells on the bottom floor, six cells on the top. But ultimately, if you were to have eight inmates on suicide watch, since those are the cells with monitoring, you could potentially have someone up on the second floor. But that's not the, in this case, she's on the bottom floor. And she's not wearing the smock. The smock is in the cell. The smock is in the cell. It does not appear she had it on at the time. But be that as it may, the smock is what gives our deputy the awareness at the time, which we believe this court's precedent says that just knowing someone is on suicide watch or having a suicide smock is not sufficient to give them the subjective awareness that there is a strong likelihood that the plaintiff is going to commit some kind of serious harm. And it's our position that the serious harm that our deputy was aware of at the time she gets to that cell is the inmate potentially harming her within the cell. The inmate is not saying, if I get out of here, I'm going to jump, or if I get out of here, I'm going to harm myself. The record is clear that she had hit her head within the cell, and our deputy made a hasty decision to try to assist the plaintiff and to go get her medical attention. You say hasty. I mean, so your client, the deputy, communicates with the medical clinic, right, with a nurse who tells the deputy to bring the inmate to the clinic, right? Correct, Your Honor. So our deputy goes from the cell block where she's talking to the plaintiff, and this is her first interaction with the plaintiff. Like I said, she was not the plaintiff's booking deputy. She was not the deputies or the mental health people that put her on suicide watch. She had never met this plaintiff before until she gets in the cell and hears the plaintiff crying for help. And it's in response to what the nurse tells her, that she makes the decision to unlock the inmate's cell? Yes, Your Honor. And then to proceed, as I understand it, immediately to that cell, because she's going to take the inmate to the clinic because she's trying to help her. Yes, Your Honor. But your client did have the ability to – there were other officers working that day, right? Yes. So she did have the ability to call for someone else. Because let's set it right, because she opens the cell, but she's not there in front of the cell opening it. She's opening it from a remote location, right? That's correct. So then she has to go from that remote location to the cell. And it's really this time gap that's the problem, because that then allows Ms. Gant to leave the cell and then proceed up the stairs. So your client could have called for someone else to be there at the cell the moment that she pressed the button to open it. Is that correct? Your Honor, could have and should have, yes. There were other options available to anyone or any deputy in there. Oh, exactly. And that's an argument you would make to the jury, right, in terms of the reasonableness of her response. But in terms of whether it should go to the jury, why should your client be precluded from even getting to that point? Judge, I think the court cleared up on this deliberate indifference standard in the Wade case from July, that her subjective awareness has to arise to criminal recklessness, and the could have and should have applies to civil recklessness, which is no longer the standard. Is it even that? Or is that negligence? Well, that's the Wade case somewhat goes into it, Your Honor, but it's still at this point in time, whether it's mere negligence. To me, when I hear, well, you could have or you should have, that's a failure to exercise reasonable care. But that sounds to me like negligence. And yes, Your Honor, that's our position, that even her actions on that day at most was some kind of negligent action at most. Your client was aware, however, that there had been previous suicide attempts, correct? I don't think in this case, I don't think the record there is any previous suicide attempts. Well, she was aware of why the protocols that were in place were there, right? She was aware of the protocols to prevent inmates on suicide watch from actually committing suicide. And yes, Your Honor. So the inmate is in her cell in this case, harming herself within the cell. So our deputy, her option would have been, does she leave her in the cell where she's already committing the harm? Or does she try to go assist her? Again, I think that is a great argument to make to the jury. But in terms of her knowledge, she knew that this inmate was on suicide watch. And you agree with me that she could have called for another deputy, another officer to be there at the time that she opened the cell. I understand the argument you might make. I'm not criticizing her actions to try to get help for Ms. Gann. Again, I think if you were to go to trial, maybe that argument would succeed with the jury in terms of her ultimate liability. But in terms of her specific actions in allowing this time period in which Ms. Gann escaped enough time. Again, we're not talking about just a moment. It was enough time for Ms. Gann to get out of the cell, run up the stairs, and then jump off the second floor. So, again, I'm having difficulty seeing why we should reverse the district court's decision here. Your Honor, respectfully, her actions did not rise to the level of criminal recklessness, which has to be here for a deliberate indifference claim. At most, it's mere negligence. And even if you were to find she disregarded that response. Might even be gross negligence. If she responds reasonably to the situation, she also cannot be held liable under the qualified immunity defense. So if you watch the video, the deputy follows the inmate up the stairs. So the second she realizes, oh, this inmate may run up the stairs because she's not housed on the second floor. What they're going to say is that stairs are an obvious risk. And our deputy testified housing them on the second floor would be an obvious risk. But we don't have her being housed on the second floor. As soon as she becomes aware of what the inmate is doing and climbing the stairs, she chases after her. She chases her up the stairs and attempts to grab her before the inmate goes through the railing and jumps to the ground, feet first, where she is injured. And in our position, that's a reasonable response because the inmate never made her aware, I'm going to jump, I'm going to run up the stairs, I'm going to harm myself. Of course, it's a reasonable response to chase her after she's opened the door from a remote location and the inmate has escaped essentially from the cell. But was it reasonable for her to be in that control room pressing the button when nobody was there to intercept or to make sure that somebody who is known to be on a suicide watch, known to your client to be on suicide watch, and someone that she would, quote unquote, someone who needed to be, quote unquote, watched closely, according to your client's deposition, whether it was reasonable for her to press that button? I think it was reasonable in that situation because the inmate is asking for help. This is not the situation. Is the question, though, whether your client acted reasonably? No, Your Honor. The question is whether she acted with criminal recklessness. But even in this situation, the inmate is asking for help. And to be clearly established, there's no case law that getting an inmate help or pressing a button clearly establishes that she violated a constitutional right of this inmate that was in the cell. The inmate was asking for help. And in most of these 11th Circuit cases that have gotten past summary judgment on deliberate indifference, whether that had been in the past mere negligence or gross negligence, it's when the deputies or the jail officers take no actions. Here, this lady took an action to help the inmate. And to say that is deliberately indifferent to her needs, what would have been deliberate indifference? Again, I don't criticize her actions that were taken to help someone who was clearly in some sort of medical distress. And, again, I think you can make that argument to a jury. But was she deliberately indifferent to the serious suicide risk that she exhibited and that ultimately played out? Judge, this all took place in 23 seconds, from the time she hits the button on the door to the time she chases the inmate and the inmate hits the ground. That's 23 seconds. These deputies work in a jail where they have to make split-second decisions. She had never been familiar with this plaintiff. The plaintiff is asking for medical help inside the cell. If her option is to wait on other deputies to assist her. Well, is the question whether the subjective awareness is one of a general suicide risk? Or is it a subjective awareness that by opening the door, this particular inmate is going to then dart out the door, run up the stairs, and jump off the stairs? And that's the standard, Judge. Is there a strong likelihood that this inmate, who was asking for help, was there a strong likelihood that an inmate who is harmed in her cell, asking for help, is there a strong likelihood that she's going to run out and run up the stairs? For example, if someone in the control room had hit the wrong button and opened her door, she would have had the same opportunity. And that would be weird. But why were they not housed on the second floor to begin with? The second floor, like I said, they're testified. If they're housed on the second floor, it's to prevent that. In this case, she's not housed.  So then she's on the first floor. But if you then open the door, and someone who's suicidal, it might be under that risk that she'll run up the stairs to the second floor to then enact. The reason why she's being placed on the first floor, to me, cuts against your argument. Judge, may I have time to respond to your question?  Yes. And Judge Lagoa has a question. Yes, Your Honor. The could have and should have does not rise to the standard of criminal recklessness that's required in this case for it to go to a jury. There's no case law that establishes that or clearly establishes that her actions would have been a constitutional violation. Here, the issue is really the subjective awareness of the officer of Everett. And there isn't anything in the record that shows that she was subjectively aware that by opening the cell, even remotely, that Gant was going to run up the stairs and try to jump. Exactly, Your Honor. Now, hypothetically, would you agree that it would be different if Gant had been yelling in her cell that she wanted to kill herself and jump? Yes. If Gant had been on the second floor and said, I'm going to jump when you open the door, and then she opens the door, I think that goes more along the lines of the Phillips case and the Cole case cited where the deputies either take no action or give a razor. Here you have her testimony. Thank you. I think we understand. Thank you. Let's hear from Mr. Smith. May it please the court, Will Smith for Rachel Grant, the appellee. Snobby Citronelle gives fair notice to corrections officers that when they have actual knowledge that an inmate presents a strong likelihood of suicide, they have to do their job to protect her. They can't do nothing to prevent the inmate from harming herself? This defendant's not doing nothing. This defendant is indisputably trying to help the inmate. You know, the problem I have with this is that so often what happens in a suicide risk case is it may well be negligence, a matter of state tort law. But when you want to frame this kind of case as a violation of the Constitution, the standard for that is extremely high. It is criminal recklessness. And it's not. Could you have done better? Could you have brought forward, gotten another deputy to help you or to be by the door? You know, woulda, coulda, shoulda is not the standard. The standard is a subjective awareness of a substantial risk, this exact substantial risk that this defendant is going to do this. Here you have, it seems to me, a deputy who is trying indisputably to help the inmate. She's trying to bring her, it's no dispute in the record, to the medical clinic to see a nurse so she can get help. Isn't that right? Well, Your Honor, I think the specific risk is the risk of suicidal behavior. And the question of, you know, there's an objective component and a subjective component. What we're talking about is subjective awareness of a risk of substantial harm. And this is a case, I think, that is distinguished from the kind of situations Your Honor is talking about because of the very strong, very clear admissions that we have on the record from Deputy Everett. She was specifically aware that Rachel Gant was on suicide watch because she was naked. She had a suicide blanket. She was specifically aware that that meant that she must have either threatened or attempted to kill herself. She admitted that in her deposition. All right, but isn't that why when she sees that and she sees, from what I understand, I guess, some evidence that there's a contusion or a bruise on her head, right, that's why she calls the nurse to inform them, like, what should I do? Should I bring her in? Right. And so, and that's also an important fact because when she speaks with, so the time frame is she goes to the cell, she speaks to Gant, she goes back to the control room, she talks to the nurse at some point, and then at some point she opens the door remotely. When she's talking to Gant herself, she learns from Gant. She's told by the nurse, bring her to the clinic, right? Yes, sir. There's no dispute. No dispute. And she's doing exactly what the nurse suggested she do to help her. Right, but I think that there's another layer to her subjective knowledge, and that's that when she's talking to Gant, Gant informs her that she's been hitting her head against the wall, trying to harm herself. But she also, Gant also tells her that she wants help, correct? Right. So Everett thinks if she wants help, she's not suicidal because she's asking for help, so she wants someone to help her. Well, I think that that's an inference certainly that a jury could draw, Your Honor, but I don't think that it's an inference that's permissible to draw against the plaintiff. Well, but it's a subjective awareness of whether or not opening the door is going to lead to her trying to kill herself when the inmate, as opposed to telling her, I want to harm myself further, is asking for help, medical help. Well, you know, Ms. Gant hasn't been deposed, first of all, so the evidence we have in the record is the evidence from the deputies and from what... The evidence is whatever it is that was placed before the court on summary judgment. Yes, sir. Yes, sir, absolutely. And so in terms of what she knew about the risk, she knew that she had been immediately harming herself, and that's a key fact. If we look at Snow, which I think is the leading published case that shows that Deputy Everett is not entitled to qualified immunity, Snow, only one of the defendants in Snow makes a past summary judgment. It's the one that has knowledge of the very recent attempts at self-harm. The others, you know, had knowledge that the defendant had been trying to slit her wrists months ago. That wasn't enough. But it's the very recent knowledge of self-harm that takes qualified immunity off the picture for that. But how is it criminally reckless to open the door? It's criminally reckless because of the admissions that we have from the deposition from Deputy Everett. She volunteered. It's an obvious suicide attempt risk that inmates will jump off the second floor. It's an obvious suicide risk. She knew that Gant had been immediately just trying to harm herself and her son, in fact, harming herself enough to produce a golf ball-sized knot. I mean, that's not a minor injury. In terms of what she knew, she also knew that there's no reason to open the door from the control room. When she was asked why she did that, she said, I just thought it would be easier. She knew that there were better ways to do this, and she deliberately chose to take the risk that Gant wouldn't be able to use that 30 seconds to get up to the second floor. But why is that not just negligence or gross negligence as opposed to criminal recklessness? It's because she was subjectively aware of the risk, and she intentionally disregarded it, Your Honor. She intentionally disregarded it by opening the door remotely from the control room, rather than doing what she knew that she had to do, which was be out there and be present to protect Rachel Gant. Deputy Everett had one job, and that was to get her safely. Can you tell me a case where we've ever held that a deputy who is indisputably trying to help an inmate and get medical attention, that their actions in doing that, even if negligent, rise to the level of criminal recklessness? Well, Your Honor, certainly there's no case where the 11th Circuit panels have held that negligence constitutes criminal recklessness. I understand that, but my question is, where the evidence indisputably shows that the deputy, the guard, is trying to help the inmate get medical attention? I can't give you a side effect right off the top of my head, Your Honor, no. I mean, because the cases that do exist are where an officer is not providing medical attention, knowing, let's take an example I can't remember, that the individual has been shot, and they're standing by making fun of the individual being shot, and they decide not to call the ambulance for several minutes. That's criminal recklessness. That's not negligence. But I think providing medical assistance is a different issue from protecting the inmate from self-harm. That is the risk that the deputy was aware of, was the risk of self-harm. And she deliberately made a choice not to take actions that would have protected her from that risk by being outside the door, whether it was calling on the radio, calling on the intercom. So many of these cases, though, what happens is the deputy, the guard, whoever you're talking about, is subjectively aware of the serious medical problem, health-related issue, and does nothing in response to it. She's subjectively aware, this is someone in distress, this is someone who needs help, and does nothing. That's not what we have here. What we have here is someone who is asking for help. We have a deputy who's trying to get her medical help and is doing things to get her medical help. And the complaint is that she didn't do that as well as she should have, which strikes me as negligence. Well, I think that there is certainly a line of cases of deliberate indifference to serious medical needs where they talk about some care versus no care, but that's not the line of cases that we're looking at here. That's why I asked you for an authority of the situation we have. Well, I mean, if you look at Snowe, Snowe's... I don't think there's an intermingling problem, though, because, yes, there is the issue of her medical need as presented with the head injury. So whether the deputy was deliberately indifferent to that medical need is different from whether she was deliberately indifferent to the medical need that's presented by her propensity, her acknowledged desires to commit suicide, right? Yes, Your Honor. They're distinct claims, and we have not brought a deliberate indifference to medical need claim here. That's not what the case is about, and I think in Hines v. Jones, one of Your Honor's opinions, talks about the fact that these are distinct claims with distinct precedents and distinct analysis. Snowe, Greeson, these are the cases where officers had specific knowledge about the inmates' medical needs and where it was not the sense of... I mean, you have pleaded this as a deliberate indifference case. This is a deliberate indifference to a suicide risk, is what you're saying. Yes, Your Honor. Which is why I ask, do we have a case where a guard who's trying to help an inmate in medical distress? We don't, Your Honor, but again, it's not... The risk here is not the risk that she would die from her head injury. The risk is that she would continue trying to harm herself, which she had very recently been doing, and that is the risk that Deputy Everett deliberately disregarded. Whether she was taking her to medical, you know, I don't think it's really relevant. Let's do a hypothetical. So the hypothetical is, let's assume that Everett did what you suggest she should have done, which is that she waited for another officer, or she waited and then had somebody remotely open the door and she was in front of the cell. And as she's transporting Miss Gant, Miss Gant runs away from her and does exactly what happened to her. Would she still have a claim? No, Your Honor, she wouldn't, because in that situation she would have done her job, she would have done what she knew she had to do, and sometimes... She would have exercised reasonable care. Well, it's not just reasonable care, Your Honor. On the testimony in this case... I mean, every time I hear this expressed, what I hear is she would have done what she should have done, which sounds like, you know, the complaint is that she failed to exercise reasonable care. Well, in suicide cases, we're always talking about what action would have prevented the suicide. No, we're not always talking about that. That's just the problem with this case. These cases, when you look at Snowe and you look at so many of them, what we have are guards who do nothing for someone who is in obvious distress. Well, and I would sharpen the focus a little bit, Your Honor, and say do nothing in respect to the risk that is relevant to the case, which is the risk of self-harm. Right, and I wanted to focus on that because the chief did ask you the question about she didn't do nothing here. But that was with regard to the medical need that she's expressing there. She did not do nothing. But what did she do with regard to the suicide risk? Yeah, and that's our point in the case, Your Honor, is that with regard to the suicide risk, she did do nothing. No, she didn't. She opens that door, and she proceeds immediately to the cell. And she chases your client up the ladder. She doesn't do nothing. Well, when you respond to an injury that's in progress of happening, Your Honor, it's already past the point of responding to the risk because the risk has become a reality. But she knows when she opens the cell, she needs to now go get this inmate, and that's what she does. With respect, Your Honor, she knows do nothing. Does she? With respect, Your Honor, she knows that when she opens the cell, she needs to be right outside that door because she admits. Oh, see, that sounds like a failure to exercise reasonable care there. Well, I think. That's not doing nothing. She proceeds, does she not, toward the cell. By then it's too late, Your Honor. It's not a failure. It sounds like negligence. Right. When I did my hypothetical, your real issue is the fact that she was not at the door when the cell opened. Right, and she admits that that's. That's really the crux of your case of that's it, is that she was not in front of the cell. Right. She knows that she needs to be there to prevent the obvious risk that she's aware of of going up to the second tier. But, again, what is the subjective awareness that she has that she is suicidal at that moment in time because she's asking for help? The subjective awareness is that she has just been very seriously harming herself inside the cell, Your Honor, and there's a clear risk that she's going to continue self-harming herself if given the means to do so. She knows all of that. She knows that this is someone who needs medical attention, someone who needs to be seen in the medical clinic. She's trying to do that. And upon opening the door to accomplish that, she then proceeds to the cell so that she can retrieve the inmate. Right? Yes, Your Honor, but she's not doing nothing. But in regard to the suicide risk, it's doing nothing, Your Honor, because she's, and, again, I want to really emphasize the admissions we have on the record from Deputy Everett. She knew about that. This is not a situation where she said, oh, my gosh, I never knew that they could jump off the second tier. It had happened twice before. She had seen people try to harm themselves in all sorts of ways. There's a very colorful deposition passage where she talks about people stabbing themselves in the eyes, taking overdoses of medication. She knows that Gant's on suicide risk. She knows she's just been harming herself. And she knows that if she opens that door and Gant gets access to that second floor, she's going to try to harm herself. I don't see where there's evidence that she knows when she opens that door, this inmate is going to run to the stairs to then jump off the second floor. And what she does is that she then proceeds immediately toward the cell to retrieve this inmate and take her to a medical plan. Well, Your Honor, respectfully, the 11th Circuit talks about in many cases where it's not necessary to know the specific nature of the risk as long as they are aware that there's a substantial risk of harm to the inmate. And I'm out of time, Your Honor, but here she knows there's a substantial risk of her continuing to harm herself if she gives her a means of self-harm. And she gave her what she recognized as an obvious means of self-harm by giving her access to that second floor. We understand your case, Mr. Smith. It's an interesting one. We're going to hear from Mr. Gilbert in rebuttal. Thank you.  Your Honor, to continue, Deputy Everett also testified on page 93 that she thought the plaintiff wanted help. She didn't think she was going to commit further harm by opening the door to assist this. And the issue we have here is, was there a strong likelihood that she was going to run up the stairs? Here, there's no evidence to support that there's a strong likelihood that someone on the first floor who's asking for help asking for help is going to then further harm herself. Asking for help, but on suicide watch. But I think if you're putting that on the deputy and for future deputies as to how to respond if someone on suicide asks for help, if they have to take further steps and get further clarity before getting someone with a nod on their help injury, that could potentially be deliberate indifference if she further harms herself in the cell where she knows a head injury has occurred. She's taking her steps to get the inmate out and her actions... Well, you're making a policy argument now. And, you know, a policy that says that if you ignore or at least you're deliberately indifferent to a suicide risk that you're aware of, that you might have to go to trial. Again, we can't predict what will happen at trial. You can make whatever arguments you want to to your jury. You know, you can make a policy argument about that. But in terms of the specific case, I, again, have difficulty seeing why we should reverse the district court here. Your Honor, our position is the district court should be reversed because the standard's not met here to rise to a deliberate indifference claim based on the facts. There's no criminal recklessness here. At most, it's mere negligence. As related to your policy argument, if there's a policy that... Policies don't affect constitutional violations. There has to be an underlying constitutional violation, even if there's a policy that may not be followed. Thank you. Thank you, Mr. Gilbert. I think we understand your case, and we're going to move on to the last one.